**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

ARTIS C. BOLDEN AND                                                    PLAINTIFFS
MARILYN BOLDEN

vs.                                                     Civil Action No. 3:08-cv-540 HTW-LRA

BILLY R. BILLINGS; QRT, INC.;
AND JOHN DOES 1-5                                                      DEFENDANT

**ORDER AND OPINION**

Before the court is the motion of defendant QRT, Inc., for summary judgment [Docket No. 33]. The key issue in defendant's motion is whether Billy R. Billings is an employee in the scope of his employment with QRT or an independent contractor. This court has subject matter jurisdiction over this case premised upon diversity of citizenship, Title 28 U.S.C. § 1332.[1] All parties are diverse and the amount in controversy exceeds the sum of $75,000, exclusive of the interest and cost. Inasmuch as this court is sitting pursuant to diversity, this court applies the substantive law of the State of Mississippi, *Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

---

[1] Title 28 U.S.C. § 1332 states, in pertinent part, that "(a) [t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between– (1) citizens of different States . . . ."

1

Defendant's motion for summary judgment is governed by Rule 56,[2] Federal Rules of Civil Procedure. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. Rule 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

I. **FACTS**

On August 2, 2005, Artis Bolden (hereinafter "Bolden" or "plaintiff") and his wife were traveling south on West Frontage Rd of I-55 just south of Briarwood Drive in Jackson, Mississippi. As plaintiff was proceeding down frontage road (near Cowboy Maloney's Electric City), a bus operated by defendant Billy R. Billings ("Billings") failed

---

[2] Federal Rule of Civil Procedure 56(a) reads as follows:

> A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.
>
> Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."
>
> Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:
>
> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

2

to stop before entering Frontage Road. The bus proceeded into plaintiff's lane of travel and caused a massive collision. As a result, plaintiff's vehicle flipped several times before landing upon its side. Plaintiffs suffered several physical injuries. In addition, Mrs. Bolden claims to have suffered loss of consortium.

Billings applied as a driver with QRT on July 18, 2005. He signed a "Driver Contract Agreement," which states that Billings is a "contract driver" and responsible for paying all his taxes and health/life insurance. Billings provided QRT with a valid commercial driver's license and a current DOT medical card.[3] The facts show that the driver did not own the bus. The bus was legally released to QRT ("Defendant")[4] via a "release form" obtained from Thomas Built Buses - the bus manufacturer. As a part of its business operation, QRT (upon obtaining "the release" from the bus manufacturer) then allowed Billings to drive the bus to the Thomas Built distributor in Texas. QRT

---

[3] A DOT medical card is provided by the United States Department of Transportation after a physical examination is conducted by a licensed "medical examiner." The term includes, but is not limited to, doctors of medicine (MD), doctors of osteopathy (DO), physician assistants (PA), advanced practice nurses (APN), and doctors of chiropractic (DC). DOT physical exams are valid for up to 24 months. The medical examiner may also issue a medical examiner's certificate for less than 24 months when it is desirable to monitor a condition, such as high blood pressure. USDOT, *The DOT Medical Exam and CMV Certification*, http://www.fmcsa.dot.gov/rules-regulations/topics/medical/aboutdotexam.htm (January 19, 2010).

[4] Defendant, QRT, Inc., is a North Carolina Corporation that engages in the delivery of buses and rigs directly from the manufacturer to the distributor. It is a small, family-run business and transports buses to distributors throughout the country. QRT contracts with as many as 50 drivers to drive buses from the bus manufacturers' facility to the distributors. QRT receives an order from a bus or rig distributor and then obtains a "release form" from the manufacturer which legally releases the bus to QRT. QRT does its own independent inspection of the buses to ensure that they are ready for delivery and the trip associated with delivery.

provides all fuel to be used to transport the bus, pays for any and all hotel rooms required for lengthy cross country trips, furnishes the driver with QRT owned license plates on the buses for transit, and provides every QRT driver with an insurance card for the bus.

Drivers are expected to drive pursuant to the USDOT authority. QRT drivers travel pursuant to USDOT authority by way of a USDOT number which was granted to QRT, not to individual drivers.[5]

QRT drivers are paid only after they return to QRT's corporate office in North Carolina. For the trip home, QRT reserves and pays for a rental car to be used by its drivers to return to North Carolina. See Exhibit "C", Deposition of QRT, pg 32-35. Depending on flight rates, QRT occasionally reserves and pays for flights for drivers to get home if such is cheaper than rental cars. *Id.* pgs. 36-37. The bills for the driver's flight and rental cars go directly to QRT. Drivers are paid a flat rate per delivery. The rate is set by QRT. In the case at hand, QRT paid Billings the flat rate of $275.00.

When a driver wants to drive a bus for QRT, he simply lets QRT know. QRT is free to use whichever driver (out of the 50 with whom it contracts) it chooses. QRT says it does not instruct its drivers on how to drive the bus. Moreover, QRT supplies no

---

[5] Companies that operate commercial vehicles transporting passengers or hauling cargo in interstate commerce must be registered with the Federal Motor Carrier Safety Administration (FMCSA) and must have a USDOT Number. Also, commercial intrastate hazardous materials carriers who haul quantities requiring a safety permit must register for a USDOT Number. The USDOT Number serves as a unique identifier when collecting and monitoring a company's safety information acquired during audits, compliance reviews, crash investigations, and inspections. USDOT, *What is a USDOT Number?*, http://www.fmcsa.dot.gov/registration-licensing/registration-USDOT.htm (January 19, 2010).

equipment to assist its drivers with the delivery of the bus. The drivers provide their own portable CB radios. QRT merely provides the bus and the keys. The drivers, says QRT, select their own routes, as QRT does not mandate any particular route. QRT contends it does not even know which route its drivers ultimately choose to make the delivery. QRT states that it does not keep tabs on the drivers or require an update or status. Additionally, the drivers do not communicate with QRT during their trips unless some problem arises.

II.  **ANALYSIS**

   A. Independent Contractor Legal Authority

The linchpin question in this case is whether QRT exhibited the requisite amount of control over Billings to categorize him as 1) an employee under the doctrine of respondeat superior or 2) an independent contractor. When the facts are undisputed, determining the type of relationship is a legal question. *Richardson v. APAC-Mississippi, Inc.*, 631 So.2d 143, 152 (Miss. 1994).

An "employee" is "a person employed by a master [or employer] to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." *Id.* at 148 (Miss. 1994). An "independent contractor," on the other hand, is "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Id.*

Courts in Mississippi engage in a factoring analysis to determine whether a

relationship is that of employer-employee or independent contractor. The factors include:

> Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees.

*Kisner v. Jackson*, 132 So. 2d 90, 91 (Miss. 1931).

According to the Fifth Circuit in its analysis of Mississippi law, another primary element of the test listed above is the "right to control and actual control." *McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir. 1994); *Richardson v. APAC-Mississippi, Inc.*, 631 So.2d 143, 152 (Miss. 1994). Thus, when analyzing the factors in *Kisner* v. *Jackson*, the court must not only determine whether QRT actually controlled Billings or its other drivers but also whether QRT maintained a "right to control" Billings or its other employees. *Id.*

III. **CONCLUSION**

The court denies defendant's motion for summary judgment and finds that disputed issues of fact remain with respect to the test elicited by the Fifth Circuit - i.e., whether QRT had the right to control Billings. For instance, Billings was beholden to a

6

convoy leader who led the convoy of drivers delivering to the same location.  This convoy leader exercised some control over the others.  He had the only gas card.  He led the way.  He selected the hotels.  During oral argument, this court was unable to ascertain how the convoy leader was selected or how much control this leader was able to exercise over other drivers.  The court recognizes that QRT did not pay Billings' personal health or life insurance, withhold his taxes (he was provided with a 1099 tax form) or provide him any benefits.  Nevertheless, the issue of paramount concern to the court here is control.  Accordingly, the court does not feel summary judgment is appropriate without further exploration of this matter.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is denied.

**SO ORDERED, this the 25th day of January, 2010.**

                                **s/ HENRY T. WINGATE**
                                **CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action: 3:08-cv-540-HTW-LRA
Order Denying Defendant's Motion for Summary Judgment